(No. 15223.—Reversed and remanded.)

NORRIS RADER, Appellant, *vs.* NANNIE B. BUSSEY *et al.*— (SAMUEL MAYER HAIMOWITZ, Appellee.)

*Opinion filed October 28, 1924.*

1. JUDICIAL SALES—*when a sale by trustee is a judicial sale for cash in hand without right of redemption.* A sale of trust property by the trustee under order of court at the request of a beneficiary, where all the parties interested in the property are before the court and request or consent to the order of sale, is a judicial sale for cash in hand wherein there is no right of redemption, and all the parties are bound by the order of the court.

2. SAME—*decision approving sale by master or trustee may be assigned for error.* The chancellor has a broad discretion in the matter of approving or disapproving a sale made by a master in chancery or trustee where the deed is by the terms of the decree not to be made to the purchaser until after confirmation of the sale, but such discretion must be exercised in accordance with established principles of law, and a decision approving or disapproving such a sale may be assigned for error.

3. SAME—*when mere inadequacy of price does not vitiate sale.* Where a judicial sale has been conducted in the usual manner and in accordance with the directions and order of the court and the purchaser is a stranger to the order of sale, mere inadequacy of price will not justify a court in vacating the sale so as to deprive the vendee of the benefit of his purchase,—especially where there is a right of redemption,—unless the inadequacy is such as amounts to evidence of fraud.

4. SAME—*judicial sale will not be set aside for informalities or irregularities.* Public policy requires stability in all judicial sales so property may bring its full value, and such a sale will not, as a rule, be set aside for mere informalities or irregularities or for causes which the parties complaining might with a reasonable degree of diligence have avoided.

5. SAME—*general rule as to re-sale because of inadequacy of price.* Where property is of small value and the expense of re-sale is as much, or more, than the difference between the inadequate price and the value of the property, the court may refuse to set the sale aside, in the absence of fraud, even though the property did not bring more than half its value; but if the property is very valuable and the cost of re-sale small in comparison, every circumstance connected with the sale should be scrutinized closely, and the slightest irregularity may be considered sufficient to order a re-sale.

6. SAME—*when sale of trust property will be set aside because of inadequate price.* A sale of trust property by the trustee under order of court, where there is no right of redemption, will be set aside where it brought but $1500 and the evidence shows the property to be worth $2500, and a deposit of $500 by a proposed purchaser who offers to bid $2000 at the re-sale will be considered sufficient security for carrying out the bid in good faith.

THOMPSON, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

McGILVRAY, EAMES, VAUGHAN & TILLEY, for appellant.

JOHN W. ELLIS, for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The appellant, Norris Rader, of Morgan City, Louisiana, as a beneficiary under a testamentary trust, filed his bill in the circuit court of Cook county praying for the appointment of a trustee to succeed a previous trustee who had died, and for an order authorizing the trustee, when appointed, to sell a portion of the trust property, consisting of an undivided one-eighth interest in a six-flat building in Chicago. The defendants to the bill, Nannie B. Bussey, as widow and as executrix of the estate of John Bussey, deceased, Florence B. McGowen, Nellie B. Hewes, Mollie B. Jackson, Jesse C. Bryant, Sophia Rader, John T. Rader, Clara J. Rader, George R. Rader, Lydia G. Rader, Charles S. Rader, Nannie Rader Edwards, Clarence C. Edwards, Helen Rader Baudry, Eugene Baudry and Catherine Rader, filed their answer, admitting the allegations of the bill and consenting to a decree in accordance with its prayer. A decree was accordingly entered by the court, and Clarence C. Edwards, of Jeanerette, Louisiana, was appointed successor in trust, and was directed to sell the one-eighth interest of the beneficiary in the property at public sale, for

cash, to the highest and best bidder; that such sale be held at the judicial sales room of the Chicago Real Estate Board, at 57 West Monroe street, Chicago; that a notice of the sale be published once each week for four successive weeks in a secular newspaper of general circulation published in Cook county, Illinois, and that notice of the sale shall also be posted in four of the most public places in said county at least four weeks previous to the day of the sale; that the sale be subject to the approval of the court, and that all the terms be distinctly set forth in all the advertisements of the sale by the trustee. On November 8, 1922, the trustee reported to the court, after duly advertising the sale as required by the decree of the court, that he offered for sale the property subject to a $10,000 incumbrance, in accordance with all the terms of the decree, and that Samuel M. Haimowitz, of Chicago, bid therefor the sum of $1500; that the same was struck off to him at said sum, he being the highest and best bidder; that he gave his check for the sum of $500, which was to be applied on the purchase price if the sale should be approved by the court, and that he stands ready and willing to pay the full price upon the delivery to him of a proper deed of conveyance. The trustee further reported that upon his information and belief the amount of said bid is not the full and fair value of the property but is inadequate and unfair, and that since the sale he has received a *bona fide* offer of $2000 for the property from William E. Schofield, who, as evidence of his good faith in making such offer, has delivered to the trustee a certified bank check, payable to the order of the trustee, for $500, to apply on account of the purchase price of the property should the sale of the same to him be approved by the court. He recommended to the court and asked that the sale be not ratified or approved. The report of the trustee is verified by the affidavit of Elmer E. Wagner. By leave of the court Samuel M. Haimowitz, the purchaser, was made a party to the proceeding and filed a sworn peti-

tion, in which he stated that the sum of $1500 for the undivided one-eighth interest of the beneficiary in the premises is not inadequate and represents the fair cash value of such interest, which is subject to an incumbrance of $10,000, and that the fair market value of the premises as a whole is the sum of $22,000, one-eighth of which is the sum of $2750, subject to $1250 incumbrance. He further stated in his petition that Schofield was present at the sale and bid for the beneficiary's interest the sum of $1000, and that after the petitioner offered an increased bid he and Schofield continued to bid against each other until petitioner bid the sum of $1500, and that thereafter Schofield refused to make a further bid. In support of his sworn petition there were also filed the affidavits of two real estate agents of Cook county, in which they stated that they were familiar with the premises and had been engaged in the real estate business in said county for ten years or more and that the fair cash market value of the premises as a whole is $22,000. In support of the verified petition of appellant for re-sale of the property by the trustee, there was filed an affidavit of a real estate agent in said county to the effect that he is familiar with the property in question; that it consists of a lot 50 feet by 125 feet, improved with a three-story brick building with basement, which yields an income of $6780 per annum, and that in his opinion the entire property is worth $30,000. On consideration of this evidence the court refused to set aside the sale but confirmed it, and Rader has appealed from this order.

The material allegations of the bill admitted by the answer and supporting the order of the court for the appointment of a trustee and sale of the property are the following: Susan Schofield, appellant's sister, died in Chicago on April 29, 1915, leaving a will, which was admitted to probate in Cook county. By her will the testatrix, after directing the payment of her debts, made specific bequests of her household goods, three diamond rings, a diamond brooch and

$200 in cash. She gave her husband, William E. Schofield, one-half of the residue of her property and gave to each of her three sisters one-fourth of the remaining half. She gave the remaining one-eighth of her property to Mary E. Adams in trust for appellant, with directions to pay the income therefrom to him during his life and the remainder to his surviving children at his death. A part of the trust property so devised to appellant was the one-eighth interest in the six-flat building, which was subject to an incumbrance of $10,000. Horace W. Stafford, of Springfield, Ohio, was appointed executor, with full power of sale and with directions to convert the entire estate into cash as soon as possible. Mary E. Adams accepted the trust in favor of appellant and acted as trustee until she was relieved of such trusteeship by the circuit court of Cook county at her request, May 19, 1917. John Bussey was then appointed by the court as her successor in trust and acted as such trustee until his death, May 26, 1922.

There is no contention that there was any fraud or any irregularity in the proceedings or in the conduct of the parties connected with the sale or interested therein. The simple and only question raised is whether or not the amount realized from the sale of the property was so inadequate as to shock the conscience of the court or to amount to fraud in law.

The sale in this case comes under the class known as judicial sales for cash in hand, wherein there is no right of redemption. This is so because all of the parties interested in the sale of the property were before the court, stated all the facts to the court, and asked the court to make the order of sale in question, which was to be subject to the confirmation of the court. All the parties are bound by the order of the court in ordering the sale, and therefore the order of the court determines the character of the sale. In passing upon the question before us we are not governed by the ordinary rules of a sale by a trustee who is authorized to

sell property and does sell it without any direction or order of the court. For this reason we do not consider the cases of *Dingman* v. *Beall,* 213 Ill. 238, and *Beall* v. *Dingman,* 227 id. 294, as entirely applicable to this case.

The chancellor has a broad discretion in the matter of approving or disapproving a sale made by a master in chancery or trustee where the deed is by the terms of the decree not to be made to the purchaser until after the confirmation of the sale. The discretion, however, thus vested in the court is not a mere arbitrary discretion but is one to be exercised in accordance with established principles of law. So a decision approving or disapproving a sale of this character may be assigned for error. (*Quigley* v. *Breckenridge,* 180 Ill. 627.) Where a judicial sale has been conducted in the usual manner and in accordance with the directions and order of the court and the purchaser is a stranger to the order of sale, as appears to be the fact in this case, mere inadequacy of price will not justify a court in vacating the sale, so as to deprive the vendee of the benefit of his purchase, unless the inadequacy is such as amounts to evidence of fraud. This court recognizes the rule that public policy requires stability in all judicial sales so property may bring its full value, and such a sale will not, as a rule, be set aside for mere informalities or irregularities or for causes which the parties complaining might with a reasonable degree of diligence have avoided. (*Quigley* v. *Breckenridge, supra; Crist* v. *McCoy,* 287 Ill. 641.) This court has also laid down the rule that mere inadequacy of price will not justify a court of equity in setting aside a judicial sale where there is a right of redemption. (*Skakel* v. *Cycle Trade Publishing Co.* 237 Ill. 482.) This latter case can have no application in this case as there is no right of redemption.

No definite rule has been laid down by this court, or by other courts, so far as we know, for the determination of the question what per cent of the actual value of property bid at a judicial sale shall be deemed so inadequate as to

shock the conscience of the court or to amount to suffi-
cient evidence of fraud in law to warrant the court in set-
ting aside the sale for mere inadequacy of price. Natural
reason and common sense would suggest that some con-
sideration should be given to the amount of property in-
volved in the settling of this question. Where the property
is of small value and the expense of re-sale would probably
amount to all, or about all, of the difference in the value
of the property and the price for which it was sold, a court
might be warranted in refusing to set aside a sale regu-
larly conducted in every respect and without any evidence
of fraud or unfairness, where the property had not brought
more than half its value. On the other hand, where the
property is very valuable and the loss to the owner would
amount to many thousands of dollars the cost of a re-sale
should not be considered, and every circumstance connected
with the sale should be scrutinized closely, and the slightest
irregularity might be considered sufficient to order a re-sale.

In this case it is our conclusion that the undisputed evi-
dence that the flat-building in question yields an income of
$6780, or more than twenty-two per cent of $30,000, is sat-
isfactory evidence that it is worth at least $30,000. This
valuation would show the net value of the entire property
to be $30,000 less $10,000 incumbrance, or $20,000, and the
net value of appellant's one-eighth interest would be $2500.
Appellant's property is therefore clearly shown to have been
sold for not more than three-fifths of its value, or $1000
less than its actual value. It is true that for appellee two
real estate agents testified that the full value of the entire
property was $22,000, which would make the net value
of appellant's one-eighth interest $1500,—the amount for
which it was sold,—but in their affidavits they make no
mention or statement as to what the annual income of the
property is. We therefore hold that the court erred in
denying appellant's petition for a re-sale of the property.

Appellee makes the contention that Schofield was a bidder at the sale of the property and that he does not deserve any special consideration by the court in the determination whether or not the sale should be set aside. That contention is well made and we are not giving him any special consideration whatever in this case. The real question is whether or not the property was sold at a price so inadequate as to amount to fraud in law. A consideration of that question concerns only the appellant, who was the owner of the property, and the purchaser, (appellee,) who claims that he has a right to complete his sale.

It is also contended that where a party seeks to set aside a judicial sale he should have the party who makes the advance bid bring the money into court or give a bond against loss on re-sale. The appellant did have the prospective purchaser at the next sale bring the amount of his advance bid into court, to be considered as a payment by him on re-sale in case he should become the purchaser, and we think this was sufficient. Appellant would have the right to consider Schofield, by his act of depositing with the trustee $500 as earnest money as evidence of his good faith in offering to bid $2000 for the property on re-sale, bound to bid on re-sale $2000 in case no one else bid as much, and would be warranted in considering the $500 as security or guaranty for his carrying out his offer in good faith to bid $2000 at the re-sale. Considering the value of this property, we consider this ample security or guaranty for a re-sale for as much as $2000.

The order of the circuit court is reversed and the cause remanded, with directions to order another advertisement and sale of the property.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting.