Earl C. Pierce et al., Defendants in Error, v. Charles C. Hoyt, Plaintiff in Error.

Gen. No. 8,440.

October term, 1930. Heard in this court at the Opinion filed January 26, 1931.

O'HARRA, O'HARRA & O'HARRA, for plaintiff in error.

ELMER C. PETER and SCHLAGENHAUF & SCHLAGENHAUF, for defendants in error.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Earl C. Pierce, defendant in error, filed his bill to foreclose two mortgages on the farm lands of Charles C. Hoyt, plaintiff in error, and a decree of foreclosure was entered, finding therein the amount due on the first mortgage to be $11,765.93, on the second mortgage $1,640.63 and that the total amount due for principal and interest was $13,406.56. The lands were offered for sale by the master in chancery November 15, 1929. Albert M. Pierce, father of the mortgagee, Earl C. Pierce, was the first bidder and bid the

sum of $14,000; S. M. Potter then bid the sum of $14,500; then Albert M. Pierce bid the sum of $15,000 and Potter bid the sum of $15,500; thereupon William Vollbracht bid the sum of $16,000 which was the last bid and accepted by the master. The master filed his report of sale and Earl C. Pierce, mortgagee and complainant in the cause, filed his petition objecting to the confirmation of the sale on the ground that Vollbracht was bidding for him and that he and his attorneys and the master in chancery had made a mistake in adding up the total amount due including the principal, interest, attorneys' fees and court costs; that the amount due under the second mortgage had been added twice and that he was informed and believed that the total amount due was the sum of $16,202.60 when in fact the total indebtedness was but $14,558.18; that when complainant made his bid of $16,000 through Vollbracht he honestly believed that the total sum due under said decree and for costs was $16,202.60 and that he intended to leave a deficit of $202.60; that he did not learn of said mistake until the afternoon of the day of the sale and immediately saw his attorneys and upon refiguring the entire amount it was ascertained that said mistake had been made and thereupon he immediately notified the master in chancery thereof and that under the circumstances he could not comply with his bid.

The plaintiff in error filed his petition requesting that said sale be confirmed. The matter was heard before the chancellor on affidavits executed by different parties. In the affidavit of the master in chancery he states that on the morning of the day of the sale Elmer C. Peter and William Schlagenhauf, attorneys for complainant, asked him to make a computation of the amount due under the decree of foreclosure; that he made the computation in the presence of said attorneys and while they were looking on and there was

a discussion as to the amount of costs that had accrued in the case; that it was then stated that the bid should be sufficiently large so that the commissions of the master would amount to $200 although ·it was stated that the complainant would bid such a sum as would leave a balance still due him under the decree; that by mistake the amount due under the second mortgage was included twice in the total; that Sclagenhauf and Peter, solicitors for complainant, looked over the computation and he left the figures with said attorneys; that following the sale complainant's attorneys, Peter and Schlagenhauf, and also Vollbracht and the complainant came to his office and gave him a check for $1,120.05, being the estimated amount of costs including fees and commissions following which all· the parties left the office; that about an hour later Jacob S. Palmer came to his office stating that he had been sent by A. W. O'Harra, attorney for Hoyt, plaintiff in error, to get the amount due under the decree of the foreclosure and while giving said Palmer said information affiant discovered the mistake that had been made and thereupon wrote a letter to Schlagenhauf advising him of said mistake and later in the same day he received a telephone message from Schlagenhauf advising affiant that a mistake had been made and had been discovered by him and Peter. It further appears from the affidavits that Pierce, the complainant, and his attorneys Peter and Schlagenhauf were at the sale but neither he nor his attorneys made any bids; that all the bidders were strangers to the case although Albert M. Pierce was the father of complainant. It also appears from affidavits that complainant procured all the persons who made bids to do so on his behalf; that it was agreed and understood between the complainant and the bidders that it would be best for the sale to have other bids than one, so that in event any other persons than those bidding for complainant

should bid, the apparent competitive bidding might make the sale bring more money and that in this manner the property might bring enough money to pay the indebtedness and the amount due under said decree so that the complainant would not have to take said land, and that said complainant did not and neither affiant nor Vollbracht expected to bid more than the sum of $14,355.58 which was the actual amount due under said decree less $202.60. Of course this last statement is in error because at the time of the bidding neither complainant, his lawyers nor bidders knew that $14,355.58 was the actual amount due under said decree.

On behalf of plaintiff in error affidavits were filed which stated that the fair cash market value of the land sold was at least $18,000 and this fact is undisputed. In the affidavits executed by plaintiff in error and his attorney it is stated that all the bidders at the sale apparently acted as if they were bidding in good faith and were all strangers to the foreclosure suit and that Vollbracht who made the bid of $16,000 and to whom the premises were struck off was a man of means and able to buy and pay for said farm and that plaintiff in error had every reason to believe he was purchasing said land because he wanted the same.

The chancellor entered an order setting aside the sale and for a resale of said lands.

Defendant in error, Pierce, relies upon the principle of law long established in this State that the court has a wide discretion in approving or disapproving a sale made under its order, and that that discretion, unless abused, will not be disturbed by a court of review. The question in this case is, therefore, was the discretion of the court abused in setting aside the sale under the facts shown by the evidence? In the case of *Rader v. Bussey,* 313 Ill. 226, it is held: "The chancellor has a broad discretion in the matter of approving or dis-

approving a sale made by a master in chancery or trustee where the deed is by the terms of the decree not to be made to the purchaser until after the confirmation of the sale. The discretion, however, thus vested in the court is not a mere arbitrary discretion but is one to be exercised in accordance with established principles of law. . . . This court recognizes the rule that public policy requires stability in all judicial sales so property may bring its full value, and such a sale will not, as a rule, be set aside for mere informalities or irregularities or for causes which the parties complaining might with a reasonable degree of diligence have avoided.'' The amount due under the decree of foreclosure could have been readily ascertained. The amount due under the two mortgages was plainly set up in the decree. The slightest effort only was necessary to ascertain the amount of the costs and the true amount due under the decree would be shown by the simple process of addition. There was no mistake made in regard to the amount of the costs but the mistake, if any, was made by adding the amount of the second mortgage twice. The mistake in figuring up the amount due was made wholly by the complainant and his attorneys and the master. The computation by the master was purely voluntary and was made in the presence of the attorneys for complainant and was delivered to them at the time. Complainant alone was responsible for his own mistake. In a court of equity in order to give a party the advantage of the mistake, the fact concerning which the mistake was made must be material to the transaction and affect its substance, and the mistake must not be the result of want of care and diligence exercised by persons of ordinary prudence under the same circumstances. Thus in the case of *Steinmeyer v. Schroeppel*, 226 Ill. 9, it was held that a mistake by a dealer in adding up the various items of the selling price of

material upon which he had been asked to furnish an estimate, would not justify a court of equity in canceling a contract to furnish such material based upon the other party's acceptance of the proopsition to furnish the same for the amount represented by the erroneous total. In the case of *Abbott v. Beebe,* 226 Ill. 417, it was held that a court will not refuse to confirm a judicial sale and order a resale on motion of an interested party merely to protect him against the result of his own negligence.

The mortgagor under a decree for a foreclosure sale is still the owner of an equity of redemption. His rights in the property are not barred by the sale during the redemption period. An equity of redemption is often a very valuable interest and it so appears to be in this case. It is the duty of a court of equity to protect the rights of the mortgagor as well as those of the mortgagee. The object of all judicial sales is to procure an amount which will insure the sale of the lands at a figure approximate to their value and the law will not tolerate any influence likely to prevent such a result. *Worden v. Rayburn,* 313 Ill. 495.

In our opinion the refusal of the chancellor to confirm the sale in question was purely arbitrary and without any equitable reason therefor. The decree of the circuit court setting aside the sale and ordering a resale is reversed and the cause remanded with directions to confirm the master's report of sale.

*Reversed and remanded with directions.*